# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

PAULA L. LEONARD and
ROBERT P. LEONARD,

        Plaintiffs,

v.                                                  CIVIL ACTION NO. 1:14-CV-42
                                                  (Judge Bailey)

SARAH STARKEY, BRENDA WARE,
TERRY WALKER, JULIE GARVIN,
COTY SHINGLETON, JAMES J. MEDINA, II,
and **WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES**,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT JULIE GARVIN'S MOTION TO DISMISS

Pending before this Court is the Motion to Dismiss filed by defendant Julie Garvin ("Garvin" or "defendant") [Doc. 71], which was filed April 30, 2015. The plaintiffs filed their Response in Opposition [Doc. 83] on May 18, 2015. Defendant Garvin filed her Reply brief [Doc. 85] on May 26, 2015. Subsequently, this Court ordered the plaintiffs to submit a more definite statement [Doc. 87], which the plaintiffs filed on August 31, 2015 [Doc. 88]. This matter is now ripe for adjudication. For the reasons that follow, the Court **GRANTS** defendant Garvin's Motion to Dismiss **[Doc. 71]**.

1

## BACKGROUND

**A.    Factual Background**

Robert Leonard ("Mr. Leonard") and Paula Leonard ("Mrs. Leonard") filed a petition in the Circuit Court of Harrison County, West Virginia, alleging parental abuse and/or neglect of the Leonards' two grandchildren. Julie Garvin ("Garvin") was appointed as the guardian *ad litem* for the children in the action ("the child abuse case"), and Sarah Starkey ("Starkey") and Brenda Ware ("Ware") were Child Protective Services ("CPS") workers assigned by their supervisor, Terri Walker ("Walker"), to the case [Doc. 50 at ¶ 4]. Upon conclusion of the child abuse case, the Leonards were granted physical custody of their grandchildren; the Leonards did not receive legal custody. [Id.].

The Leonards allege that "defendants Garvin and Starkey, and possibly Walker," had planned for Starkey to conduct a home visit without notice prior to March 14, 2012; Mr. Leonard refused entry, and "later asserted in court papers filed in the child abuse case . . . that he has a constitutional right to refuse a government agent's entry into his home if the agent does not have a warrant or court order authorizing the entry." [Id.].

Following Starkey's unsuccessful home visit, Starkey, Ware, and Garvin planned to "remove the children from the Leonards' lawful court-ordered physical custody by force aided by the assistance of law enforcement under color of CPS authority" [id. at ¶ 5], with "the approval of and under the direction of defendant Walker." [Id.]. Of import, on March 9, 2012, defendant Garvin reported the alleged "imminent danger" the plaintiffs posed to the children, yet no action was taken until five days later on March 14. This Court also notes that defendant Garvin, in her Motion to Dismiss, states that "abuse *may* have been

2

occurring . . ..." [Doc. 72 at p. 12] (emphasis added).

Starkey called the Harrison County Sheriff's Department, identified herself as a CPS worker, and requested assistance in the removal, indicating that "she anticipated problems at the residence." [Id.]. Harrison County Deputy Sheriffs Shingleton and Medina were sent to meet Starkey, Ware and Garvin in the parking lot behind the Harrison County Courthouse to accompany them to the Leonards' home. [Id.]. The defendants all arrived at the Leonards' home around 6:21 p.m. [Id.]. The deputy defendants each arrived in their law enforcement vehicles, while Starkey, Ware and Garvin arrived in one car together. [Id.]. The deputy defendants, who were in their uniforms and armed, approached the Leonards' home, where Mr. Leonard was present. [Id. at ¶ 6]. The deputies asked Mr. Leonard to exit the home, but he refused. [Id.].

The deputies then opened the front door, reached inside, and forcibly removed Mr. Leonard from the residence. [Id.]. Once outside, the deputies handcuffed and searched Mr. Leonard. [Id.]. The Leonards allege that one of the two deputies "intentionally and maliciously choked" Mr. Leonard while he was restrained on the ground. [Id. at ¶ 7].[1]

After Mr. Leonard was restrained, Starkey, Ware, and Garvin entered the home and seized personal property, without the consent of the Leonards or other authorization.[2] [Id.].

---

[1] The Leonards do not specify which of the deputies "intentionally and maliciously choked" Mr. Leonard [Doc. 50 at ¶ 27].

[2] It is unclear what was seized from the Leonards' home, as the only fact alleged in relation to this claim states that, "defendants Starkey, Walker [sic] and Garvin, working in concert . . . seized items of personal . . . and they then left the residence with the property" [Doc. 50 at pp. 7-8]. Defendants, however, allude to taking the grandchildren's belongings in their brief. Plaintiffs' More Definite Statement does, however, allege "Starkey, Ware and Garvin . . . seized items of personal property belonging to the plaintiffs." [Doc. 88 at 7].

Garvin and Shingleton took the children directly to the Harrison County Courthouse for emergency removal proceedings pursuant to W.Va. Code § 49-6-3(c). [Id.].

**B.   Procedural Background**

On March 12, 2014, the Leonards filed suit in this Court against Starkey, Ware, Walker, Garvin, Shingleton, Medina, and the West Virginia Department of Health and Human Resources ("WVDHHR") [Doc. 1].  On October 7, 2014, Judge Irene M. Keeley heard oral argument on the previous motions to dismiss [Doc. 43], and denied the same without prejudice. [Id.].[3]  The Court ordered the Leonards to file an amended complaint, [Id. at 2], which they did on December 1, 2014, alleging the following [Doc. 50]:

- **Counts 1 and 2:** Violation of the Leonards' right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (against Starkey, Ware, Walker, Garvin, Shingleton and/or Medina);

- **Counts 3 and 4:** Intentional Infliction of Emotional Distress (against Starkey, Ware, Walker, Garvin, Shingleton, and/or Medina);[4]

- **Count 6:** Assault and Battery (against Shingleton and/or Medina);

- **Count 7:** Civil Conspiracy (against Starkey, Ware, Walker, Garvin, Shingleton, and Medina); and

- **Count 8:** Vicarious Liability (against defendant WVDHHR).

On April 30, 2015, defendant Garvin filed the instant Motion to Dismiss, arguing that

---

[3] This matter was subsequently transferred to the undersigned judge on September 22, 2015 [Doc. 90].

[4] There is no "Count 5" listed in the Amended Complaint.

4

because of "the principles of immunity, issue preclusion, and plaintiffs' failure to plausibly plead any cause of action, all of the plaintiffs' claims must fail as a matter of law and should therefore be dismissed." [Doc. 72 at 7]. On May 18, 2015, the plaintiffs filed a response arguing that they have alleged facts sufficient to support all claims, that Garvin's claim of immunity is procedurally defective, and that Garvin is not entitled to immunity as a guardian *ad litem*, because she was not acting as a guardian *ad litem* at the time of the removal. [Doc. 83 at 7]. On May 26, 2015, Garvin filed a reply, arguing that regardless of the plaintiffs' procedural arguments, she is still immune from all claims, and notes that the plaintiffs have not addressed why their claim of civil conspiracy should not fail as alleged in her initial motion.[5]

## **LEGAL STANDARD**

In reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. **Zak v. Chelsea**, 780 F.3d 597, 601 (4th Cir. 2015)(citing **Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.**, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." **Papasan v. Allain**, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "'enough facts to state a claim

---

[5] This Court notes that, in her Reply, defendant Garvin abandons her arguments of issue preclusion. [Doc. 85 at 5]. Accordingly, this Court will not address the same.

to relief that is *plausible* on its face.'" ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." ***Id***. However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." ***Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.***, 367 F.3d 212, 234 (4th Cir. 2004).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." ***Republican Party of N.C. v. Martin***, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" ***Goodman v. Praxair, Inc.***, 494 F.3d 458, 464 (4th Cir. 2007) (quoting ***Richmond, Fredericksburg & Potomac R.R. v. Forst***, 4 F.3d 244, 250 (4th Cir. 1993)). The Supreme Court of the United States has repeatedly stressed "the importance of resolving immunity questions at the earliest

6

possible stage in litigation . . ..." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see* ***Brockington v. Boykins***, 637 F.3d 503, 506 (4th Cir. 2011) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").

## ANALYSIS

The Leonards' Amended Complaint [Doc. 50] alleges the following claims against defendant Garvin: (1) violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) intentional infliction of emotional distress; and (3) civil conspiracy. First, Garvin argues that the plaintiffs have failed to state a claim upon which relief can be granted. [Doc. 72 at 7]. Next, Garvin argues that as a guardian *ad litem*, she is entitled to immunity from both the federal § 1983 claims and the state law claims. [Id. at 8-13]. Finally, Garvin argues that even if the Court does not find she is immune from the civil conspiracy claims, there is no underlying tort to support the claim as required by law because no wrongful acts were committed. [Id. at 14-15].

**A.    Immunity**

Defendant Garvin argues that she should be shielded from claims arising out of her duties as a guardian *ad litem* because she is entitled to: (1) federal quasi-judicial immunity against the plaintiffs' § 1983 claims; (2) prosecutorial immunity or quasi-judicial immunity for the plaintiffs' state law claims; and (3) quasi-judicial immunity arising under West Virginia law as a state employee.

Under West Virginia law, the duty of a guardian *ad litem* is to "faithfully represent the

7

interest or estate of the infant . . . for whom [s]he is appointed . . . ." W.Va. Code § 56-4-10 (2015). "A court-appointed guardian *ad litem's* services are provided to the court on behalf of the child. The guardian *ad litem* acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child." W.Va. R. Fam. Ct. Rule 47 (2015). A guardian *ad litem's* role in abuse proceedings does not cease until the infant is placed in a permanent home. ***In re Brian James D.***, fn.3 209 W. Va. 537, 550 S.E.2d 73 (2001). "[A] guardian *ad litem* has a duty to represent the child[ren] to whom he or she has been appointed, as effectively as if the guardian *ad litem* were in a normal lawyer-client relationship." ***Matter of Scottie D.***, 185 W. Va. 191, 198, 406 S.E.2d 214, 221 (1991).

Because this Court is not required to accept legal conclusions couched as factual allegations as true, this Court will not give credence to plaintiffs' assertion that Garvin's actions "were not actions she engaged in while functioning as the attorney for the children or the guardian *ad litem* for the children's best interest in the state-court child abuse case, but were for extra-judicial actions engaged in by her as an agent assisting the WVDHHR's Walker, Starkey and Ware." [Doc. 83 at 8].

1. **Prosecutorial or Quasi-Judicial Immunity**

    i. **Absolute Immunity in Performance of Duties**

Absolute immunity has been long recognized for certain officials both at common law and under 42 U.S.C. § 1983 on the basis that it was necessary in order to protect the official in the execution of her duties. Under common law, judges and prosecutors received absolute immunity for duties executed within the scope of the judicial process. In the past, the Fourth Circuit has extended absolute immunity to court-appointed guardians *ad litem*

8

for acts occurring within the judicial process. *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994); *Vosburg v. Dep't of Soc. Servs.*, 884 F.3d 133 (4th Cir. 1989). "The doctrine of quasi-judicial immunity applies to non-judicial officers performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Ward v. Plymale*, 2013 WL 6164277 (S.D. W.Va. Nov. 25, 2013)(internal quotations and citations omitted). This Court finds defendant Garvin was working in such a capacity while carrying out her duties as guardian *ad litem*. Accordingly, this Court finds that Garvin is afforded this immunity.

## CONCLUSION

Insofar as this Court finds defendant Garvin is entitled to immunity, the Motion to Dismiss **[Doc. 71]** is **GRANTED**. Accordingly, defendant Julie Garvin is hereby **DISMISSED** from this action.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

**DATED**: December 8, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE