# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG

**PAULA L. LEONARD** and
**ROBERT P. LEONARD,**

        Plaintiffs,

**v.**                                   **CIVIL ACTION NO. 1:14-CV-42**
                                               **(Judge Bailey)**

**SARAH STARKEY, BRENDA WARE,**
**TERRY WALKER, JULIE GARVIN,**
**COTY SHINGLETON, JAMES J. MEDINA, II,**
and **WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS</u>

Pending before this Court is Defendants Starkey, Ware, Walker, and West Virginia Department of Health and Human Resources' Motion to Dismiss Amended Complaint [Doc. 73], which was filed April 30, 2015. The plaintiffs filed their Response in Opposition [Doc. 82] on May 18, 2015. The DHHR defendants filed their Reply brief [Doc. 86] on May 26, 2015. Subsequently, this Court ordered the plaintiffs to submit a more definite statement [Doc. 87], which the plaintiffs filed on August 31, 2015 [Doc. 88]. This matter is now ripe for adjudication. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' Motion to Dismiss **[Doc. 73]**.

## **BACKGROUND**

### A.      **Factual Background**

Robert Leonard ("Mr. Leonard") and Paula Leonard ("Mrs. Leonard") filed a petition in the Circuit Court of Harrison County, West Virginia, alleging parental abuse and/or neglect of the Leonards' two grandchildren.  Julie Garvin ("Garvin") was appointed as the guardian *ad litem* for the children in the action ("the child abuse case"), and Sarah Starkey ("Starkey") and Brenda Ware ("Ware") were Child Protective Services ("CPS") workers assigned by their supervisor, Terri Walker ("Walker"), to the case [Doc. 50 at ¶ 4].  Upon conclusion of the child abuse case, the Leonards were granted physical custody of their grandchildren; the Leonards did not receive legal custody. [Id.].

The Leonards allege that "defendants Garvin and Starkey, and possibly Walker," had planned for Starkey to conduct a home visit without notice prior to March 14, 2012; Mr. Leonard refused entry, and "later asserted in court papers filed in the child abuse case . . . that he has a constitutional right to refuse a government agent's entry into his home if the agent does not have a warrant or court order authorizing the entry."  [Id.].

Following Starkey's unsuccessful home visit, Starkey, Ware, and Garvin planned to "remove the children from the Leonards' lawful court-ordered physical custody by force aided by the assistance of law enforcement under color of CPS authority" [id. at ¶ 5], with "the approval of and under the direction of defendant Walker."  [Id.].  Of import, on March 9, 2012, defendant Garvin reported the alleged "imminent danger" the plaintiffs posed to the children, yet no action was taken until five days later on March 14.  This Court also

notes that defendant Garvin, in her Motion to Dismiss, states that "abuse *may* have been occurring . . .." [Doc. 72 at p. 12] (emphasis added).

Starkey called the Harrison County Sheriff's Department, identified herself as a CPS worker, and requested assistance in the removal, indicating that "she anticipated problems at the residence." [Doc. 50 at ¶ 5]. Harrison County Deputy Sheriffs Shingleton and Medina were sent to meet Starkey, Ware and Garvin in the parking lot behind the Harrison County Courthouse to accompany them to the Leonards' home. [Id.]. The defendants all arrived at the Leonards' home around 6:21 p.m. [Id.]. The deputy defendants each arrived in their law enforcement vehicles, while Starkey, Ware and Garvin arrived in one car together. [Id.]. The deputy defendants, who were in their uniforms and armed, approached the Leonards' home, where Mr. Leonard was present. [Id. at ¶ 6]. The deputies asked Mr. Leonard to exit the home, but he refused. [Id.].

The deputies then opened the front door, reached inside, and forcibly removed Mr. Leonard from the residence. [Id.]. Once outside, the deputies handcuffed and searched Mr. Leonard. [Id.]. The Leonards allege that one of the two deputies "intentionally and maliciously choked" Mr. Leonard while he was restrained on the ground. [Id. at ¶ 7].[1]

After Mr. Leonard was restrained, Starkey, Ware, and Garvin entered the home and seized personal property, without the consent of the Leonards or other authorization.[2] [Id.].

---

[1] The Leonards do not specify which of the deputies "intentionally and maliciously choked" Mr. Leonard [Doc. 50 at ¶ 7].

[2] It is unclear what was seized from the Leonards' home, as the only fact alleged in relation to this claim states that, "defendants Starkey, Walker [sic] and Garvin, working in concert . . . seized items of personal . . . and they then left the residence with the property" [Doc. 50 at ¶¶ 7-8]. Defendants, however, allude to taking the grandchildren's belongings in their brief. Plaintiffs' More Definite Statement does, however, allege

Garvin and Shingleton took the children directly to the Harrison County Courthouse for emergency removal proceedings pursuant to W.Va. Code § 49-6-3(c). [Id.].

## B.    Procedural Background

On March 12, 2014, the Leonards filed suit in this Court against Starkey, Ware, Walker, Garvin, Shingleton, Medina, and the West Virginia Department of Health and Human Resources ("WVDHHR") [Doc. 1]. On October 7, 2014, Judge Irene M. Keeley[3] heard oral argument on the previous motions to dismiss [Doc. 43], and denied the same without prejudice. [Id.]. The Court ordered the Leonards to file an amended complaint, [Id. at 2], which they did on December 1, 2014, alleging the following [Doc. 50]:

- •    **Counts 1 and 2:** Violation of the Leonards' right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (against Starkey, Ware, Walker, Garvin, Shingleton and/or Medina);

- •    **Counts 3 and 4:** Intentional Infliction of Emotional Distress (against Starkey, Ware, Walker, Garvin, Shingleton, and/or Medina);[4]

- •    **Count 6:** Assault and Battery (against Shingleton and/or Medina);

- •    **Count 7:** Civil Conspiracy (against Starkey, Ware, Walker, Garvin, Shingleton, and Medina); and

---

"Starkey, Ware and Garvin . . . seized items of personal property belonging to the plaintiffs." [Doc. 88 at 7].

[3] This matter was transferred to the undersigned judge on September 22, 2015 [Doc. 90].

[4] There is no "Count 5" listed in the Amended Complaint.

• **Count 8:** Vicarious Liability (against defendant WVDHHR).

On April 30, 2015, the DHHR defendants filed the instant Motion to Dismiss, arguing that the Leonards did not plead sufficient facts to state a claim upon which relief can be granted, or to overcome the defendants' sovereign and qualified immunity.

## LEGAL STANDARD

In reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. *Zak v. Chelsea*, 780 F.3d 597, 601 (4th Cir. 2015)(citing *Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is *plausible* on its face.' *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (emphasis added)." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by

reference, and matters of which a court may take judicial notice." ***Tellabs, Inc. v. Makor Issues & Rights, Ltd.***, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." ***Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.***, 367 F.3d 212, 234 (4th Cir. 2004).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." ***Republican Party of N.C. v. Martin***, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" ***Goodman v. Praxair, Inc.***, 494 F.3d 458, 464 (4th Cir. 2007) (quoting ***Richmond, Fredericksburg & Potomac R.R. v. Forst***, 4 F.3d 244, 250 (4th Cir. 1993)). The Supreme Court of the United States has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation . . .." ***Hunter v. Bryant***, 502 U.S. 224, 227 (1991); *see* ***Brockington v. Boykins***, 637 F.3d 503, 506 (4th Cir. 2011) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.").

## ANALYSIS

The Leonards' Amended Complaint [Doc. 50] alleges the following claims against the DHHR defendants: (1) violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) intentional infliction of emotional distress; and (3) civil conspiracy. First, defendants argue that the Leonards' state law claims are barred by statutory immunity pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12a-5(b) (the "Act"). Second, the DHHR defendants contend that the Leonards have failed to state a § 1983 claim, or in the alternative, that they are entitled to qualified immunity. Third, they argue that the Leonards have failed to state plausible claims of intentional infliction of emotional distress. Finally, defendants argue that because the Leonards have failed to state any plausible tort claim, the claim of civil conspiracy must fail as a matter of law.

As to any new allegations or claims raised in the Leonards' response to the motion to dismiss, this Court will not consider them for the purposes of resolving the pending motion. *See **Occupy Columbia v. Haley***, 738 F.3d 107, 116 (4th Cir. 2013) ("In resolving a motion pursuant to Rule 12(b)(6) . . ., a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment"); ***Imagine Medispa, LLC v. Transformations, Inc.***, 999 F.Supp.2d 873, 879 (S.D. W.Va. 2014) (refusing to consider new allegations in resolving a motion to dismiss where the plaintiffs had not moved to amend their complaint to include such allegations). This Court will, however, consider the Plaintiffs' More Definite Statement [Doc. 88] as it was Court-ordered and no defendant has challenged it.

**A.     Individual Versus Official Capacity**

This Court must first examine whether the plaintiffs' claims against the DHHR defendants are pleaded against them in their official capacities or their individual capacities; the Amended Complaint is silent on this issue.  The plaintiffs argue the claims are brought against the DHHR defendants only in their individual capacities.  The defendants argue these are clearly official capacity claims subject to immunity.

The test for this Court to determine official versus individual capacity was set forth in **Biggs v. Meadows**, 66 F.3d 56 (4th Cir. 1995).  Finding this question one of first impression in the Fourth Circuit, the Court held that: "a litigant need not explicitly draw such a distinction . . . . Instead, a court must look to the substance of the complaint, the relief sought, and the course of the proceedings to determine the nature of a plaintiff[s'] claims." **Biggs**, 66 F.3d at 56.  The Court expanded:

> One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint.  *See* **Hill v. Shelander**, 924 F.2d 1370, 1374 (7th Cir. 1991)(finding a personal capacity claim where "the unconstitutional conduct alleged involves [the defendant's] individual actions and nowhere alludes to an official policy or custom that would shield him from individual culpability"); *see also* **Conner [v. Reinhard]**, 847 F.2d [384,] 394 n. 8 [(7th Cir. 1988)].  Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory

or punitive damages, since such relief is unavailable in official capacity suits. *See, e.g.*, **Shabazz v. Coughlin**, 852 F.2d 697, 700 (2d Cir. 1988); **Pride v. Does**, 997 F.2d 712, 715 (10th Cir. 1993); **Price [v. Akaka]**, 928 F.2d [824,] 828 [(9th Cir. 1990)]; **Gregory [v. Chehi]**, 843 F.2d [111,] 119-20 [(3d Cir. 1988)]; **Hill [v. Shelander]**, 924 F.2d [1370,] 1374 [(7th Cir. 1991)]. The nature of any defenses raised in response to the complaint is an additional relevant factor. Because qualified immunity is available only in a personal capacity suit, **Kentucky v. Graham**, 473 U.S. 159, 167 (1985), the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally. *See* **Conner**, 847 F.2d at 394; **Lundgren [v. McDaniel]**, 814 F.2d [600,] 604 [(11th Cir. 1987)]. Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

**Biggs**, 66 F.3d at 61.

Applying the above analysis to this case, this Court must first examine the substance of the Leonards' Amended Complaint. As the DHHR defendants note, the plaintiffs state in their Amended Complaint that, "At all times material to the Claims made herein, within the scope of their employment with WVDHHR, defendant Terri Walker had supervisory authority over defendants Sarah Starkey and Brenda Ware" and "actions of defendants Starkey, Ware and Walker alleged above: were intentionally and maliciously engaged in by them while the defendants were acting as employees of State of West Virginia [DHHR] and under the color of their statutory authority to take emergency physical

custody of children under certain circumstances in accordance with the provisions of W.Va. Code § 49-6-3(c)." [Doc. 50 at ¶¶ 9, 33].

These allegations do not necessarily implicate an official policy or custom. **Graham**, 473 U.S. at 166 ("[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). This is precisely the manner in which the Amended Complaint frames the DHHR defendants' roles.

Additionally, as in **Biggs**, the DHHR defendants have asserted that they are entitled to qualified immunity, which would suggest they perceived the Amended Complaint to state a claim against them as individuals, since qualified immunity is unavailable in official capacity suits. *See* **Graham**, 473 U.S. at 165. On the other hand, also like in **Biggs**, the defendants also raised the issue of Eleventh Amendment immunity, so this factor is accorded less weight than otherwise would be the case. In any event, the assertion of qualified immunity provides some indication that the DHHR defendants are not prejudiced by treating the Amended Complaint as one brought against them in their individual capacities. Finally, the Amended Complaint seeks relief against the DHHR defendants in the form of compensatory and punitive damages, neither of which are available in official capacity suits. *See, e.g.*, **Shabazz v. Coughlin**, 852 F.2d 697, 700 (2d Cir. 1988); **Pride v. Does**, 997 F.2d 712, 715 (10th Cir. 1993). Overall, the relevant factors in this case demonstrate that the Leonards intended to sue the defendants as individuals. *See* **Biggs,** *supra*. Accordingly, this Court will analyze such claims as though they were pleaded against the DHHR defendants in their individual capacities. This Court notes its difficulty

in ruling on the DHHR defendants' Motion to Dismiss as its majority is framed in terms of the defendants in their official capacities. Nevertheless, this Court finds it can proceed on most issues raised.

## B.    Immunities Generally

The Supreme Court of Appeals of West Virginia has recently noted the complexities involved when addressing claims of immunity:

> We begin our analysis by observing that, admittedly, our caselaw analyzing and applying the various governmental immunities – sovereign, judicial, quasi-judicial, qualified, and statutory – to the vast array of governmental agencies, officials, employees and widely disparate factual underpinnings has created a patchwork of holdings. These various holdings against which each particular set of facts must be analyzed lead inevitably to a situation where some allegations fit more comfortably with certain syllabus points than others. Much of the absence of harmony is simply the nature of the beast: immunities must be assessed on a case-by-case basis in light of the governmental entities and/or officials named and the nature of the actions and allegations giving rise to the claim. *See* Syl. Pt. 9, *in part*, **Parkulo [v. West Virginia Bd. of Probation and Parole]**, 199 W. Va. 161, 483 S.E.2d 507 [(1996)] ("The existence of the State's immunity [] must be determined on a case-by-case basis."). As such, we will examine the claims in the case sub judice under the scope of the particular qualified immunity holdings which most accurately conform to the nature of the particular allegations.

*West Virginia DHHR v. Payne*, 231 W. Va. 563, 571, 746 S.E.2d 554, 562 (2013).

With that reassuring guidance in mind, this Court will delve into the various immunities claimed by the defendants.

**C.    Qualified Immunity**

The DHHR defendants argue that the Leonards' § 1983 claims must be dismissed because: (1) the Leonards' allegations fail to support a § 1983 claim because they do not identify a Constitutional right that was violated; or (2) qualified immunity bars the claim. Section 1983 allows for a plaintiff to assert a claim against any "person" who, acting under color of state law, "depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)).

"In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim or mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). "'A public official who is acting within the scope of his authority and is not covered by the provisions of W.Va. Code 29-12A-1 *et seq.*, is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known . . ..' Syl., *State v. Chase*

*Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992)."  Syl. Pt. 3, *Clark*, 195 W. Va. 272.

As an initial matter, taking the well-pleaded facts in the Amended Complaint as true, this Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Hunter v. Town of Mocksville, N.C.*, __ F.3d __, 2015 WL 3651646, at *4 (4th Cir. 2015).  This Court, in its discretion, may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *M.C. ex rel. Crawford v. Amrhein*, 598 Fed.Appx. 143, 146 (4th Cir. 2015) (citing *Pearson*, 555 U.S. at 236).

### 1. Unreasonable Search

The Leonards allege that Starkey, Ware, and Garvin entered the Leonards' home and seized personal property, without the consent of the Leonards or other authorization. On this basis, the Leonards argue they have plausibly alleged a Fourth Amendment violation against the DHHR defendants under § 1983. [Id.].

### i. Clearly Established Right

Fourth Amendment protections are triggered when the state intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.'"  *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).  "Because individuals ordinarily possess the highest expectation of privacy within the curtilage of their home, that area typically is 'afforded the most stringent Fourth Amendment protection.'"  *United States v. Taylor*, 90 F.3d 903, 908

(4th Cir. 1996) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). "With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (citations omitted).

The right to be secure in one's home from warrantless and forcible intrusion in the absence of exigent circumstances is clearly established. In *Payton v. New York*, 445 U.S. 573, 590 (1980), the Supreme Court stated that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant." *Id*. Thus, at the time of the intrusion, there was clearly established law from the Supreme Court prohibiting the DHHR defendants' entry into the Leonards' home without a warrant, exigent circumstances, or court order.

### ii. Violation of Constitutional Right

The Leonards claim that their constitutional rights were violated when the DHHR defendants, acting under color of state law, entered their home without a warrant, exigent circumstances, or other authorization, in violation of the Fourth Amendment and seized their personal property. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). However, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Id*. at 403. Notably, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." *Id*. at 404

14

(citations omitted). "[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show . . . the presence of 'exigent circumstances.'" ***Coolidge v. New Hampshire***, 403 U.S. 443, 474-75 (1971). An "exigent circumstance" exists when "real immediate and serious consequence" could occur if the police delay their action in order to obtain a warrant. ***Welsh v. Wisconsin***, 466 U.S. 740, 751 (1984) (citations omitted).

In this case, the deputy defendants, accompanied by the DHHR defendants, were dispatched for an emergency removal pursuant to W.Va. Code § 49-6-3(c), which applies when a child is in imminent danger of further abuse and there are no available alternatives [Doc. 50 at 5].[5] A social worker had informed the dispatcher "that she anticipated problems at the residence," and when deputies arrived at the home and requested that Mr. Leonard come outside, Mr. Leonard asked if they had a warrant and then refused to exit the home. [Id. at 6]. The deputies then reached into the home and "forcibly pulled" Mr. Leonard outside to search and detain him. [Id.]. Starkey, Ware, and Garvin then entered the house to retrieve the children.

---

[5] "If a child . . . shall, in the presence of a child protective service worker, be in an emergency situation which constitutes an imminent danger to the physical well being of the child . . ., and if such worker has probable cause to believe that the child or children will suffer additional child abuse or neglect . . . *before a petition can be filed and temporary custody can be ordered*, the worker may, prior to the filing of a petition, take the child or children into his or her custody without a court order . . .." W.Va. Code § 49-6-3(c) (emphasis added).

The defendants argue they were within their authority to enter the home for emergency removal pursuant to W.Va. Code § 49-6-3(c).[6] The Section provides, however, that:

> "If a child . . . shall, *in the presence of a child protective service worker*, be in an emergency situation which constitutes an imminent danger to the physical well being of the child or children, as that phrase is defined in section three [§ 49-1-3], article one of this chapter, and if such worker has probable cause to believe that the child or children will suffer additional child abuse or neglect . . . *before a petition can be filed and temporary custody can be ordered*, the worker may, prior to the filing of a petition, take the child or children into his or her custody without a court order . . .."

W.Va. Code § 49-6-3(c) (emphasis added).

W.Va. Code § 49-1-3(8) provides the necessary definitions:

> "'Imminent danger to the physical well being of the child'" means an emergency situation in which the welfare or the life of the child is threatened. Such emergency situation exists when there is reasonable cause to believe that any child in the home is or has been sexually abused . . .."

Importantly, on March 9, 2012, GAL Garvin reported the alleged "imminent danger" the plaintiffs posed to the children, yet no action was taken until five days later on March 14. This Court also notes that GAL Garvin, in her Motion to Dismiss, stated that "abuse

---

[6] Chapter 49 of the West Virginia Code was reorganized, renumbered and superseded by Acts 2015, Chapter 46 (House Bill 2200), effective February 16, 2015.

*may* have been occurring . . .." [Doc. 72 at p. 12] (emphasis added). These allegations raise several issues precluding dismissal at this time.

Most importantly, this Court notes the language of the statute, which provides for taking if there is "probable cause to believe that the child or children will suffer additional child abuse . . . before a petition can be filed and temporary custody can be ordered . . .." W.Va. Code § 49-6-3(c). This Court has no facts or allegations before it necessary to determine whether there existed such an imminent danger that additional abuse would occur before a petition could be filed and temporary custody ordered. Defendants have offered no explanation at this time as to the five (5) day delay between the alleged abuse and the "emergency removal" or why they could not petition for and obtain a court order during this period. Defendants have also not asserted that the alleged abuse took place "in the presence of a child protective services worker"[7] as stated in the Code. Id.

The Code sections preceding the above cited provision, § 49-6-3(c), would have provided a much less drastic avenue, complete with a court order. Pursuant to § 49-6-3(a), the defendants easily could have reached the same result. It allows for immediate removal upon filing of a petition and court order "pending a preliminary hearing if it finds that there exists imminent danger to the physical well being of the child and there are no reasonably available alternatives to removal of the child . . .." § 49-6-3(a)(1)-(2). The defendants have not provided any reason why this less drastic course of action was not followed instead of the questionable course they did so choose to follow.

---

[7] This Court has not uncovered any case law regarding the effect of this language, nor have the parties provided any. It is unclear whether a child protective services worker must personally witness abuse to trigger this Code provision. This Court, however, does not believe this issue need be decided at this time.

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  **Payton v. New York**, 445 U.S. 573, 590 (1980).  Based on the facts available on the face of the Amended Complaint, the DHHR defendants carried out a warrantless, non-consensual, unauthorized entry into the Leonards' home, with no exigent circumstances, in violation of the Leonards' Fourth Amendment right to be secure in their home from Government intrusion, and seized items of their personal property.  Accordingly, the Motion to Dismiss based on qualified immunity is **DENIED WITHOUT PREJUDICE**.

**D.     Statutory Immunity**

The DHHR defendants also claim immunity for Child Protective Services Case Workers.  West Virginia Code § 49-6A-9(g) provides:

> No Child Protective Services Case Worker may be held personally liable for any professional decision or action thereupon: arrived at in the performance of his or her official duties as set forth in this section or agency rules promulgated thereupon *Provided, That nothing in this subsection protects any Child Protective Services worker from any liability arising from* the operation of a motor vehicle or for *any loss caused by gross negligence, willful or wanton misconduct or intentional misconduct.*

W.Va. Code § 49-6A-9(g) (emphasis added).

As this Court has stated at length above, the Amended Complaint alleges the actions of the DHHR defendants were willful and intentional.  Further, allegations of seizing personal property from the Leonards' home would certainly not be contemplated by this

provision. Accordingly, at this stage in the litigation, this Court is not prepared to provide the immunity provided to CPS workers under this provision. Accordingly, the Motion to Dismiss is **DENIED WITHOUT PREJUDICE** on these statutory immunity grounds.

## E. Sovereign Immunity

Finally, the WVDHHR itself argues it is entitled to Eleventh Amendment immunity from suit in federal court for damages. The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. "It therefore preserves sovereign immunity of the 'state agents and state instrumentalities' or stated otherwise, to 'arms of the State' and State officials. *Chas v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001)(citations omitted)." *Underwood v. WVDHHR*, 2013 WL 2319253 (S.D. W.Va. May 28, 2013); *see also* ***Westinghouse Elec. Corp. v. W. Va. Dep't of Highways***, 845 F.2d 468, 469 (4th Cir. 1988)("[A] claim against the West Virginia Department of Highways is, for Eleventh Amendment purposes, properly considered against the state itself."). The WVDHHR has also been held to be "an arm of the State and thus entitled to Eleventh Amendment immunity." ***Workman v. Mingo Cnty. Sch.***, 667 F.Supp.2d 679, 684 n. 7 (S.D. W.Va. 2009) ("[A]n act of the West Virginia Legislature created DHHR and allowed it to operate as part of the executive branch."). Because "this amendment precludes suits by a citizen of a state against that state[], ***Hans v. Lousiana***, 134 U.S. 1 (1890), . . . [i]t also precludes naming an arm of the state as a defendant. *See, e.g.*, ***Westinghouse Elec. Corp. v. W. Va. Dep't of Highways***, 845 F.2d 468, 469 (4th

Cir. 1988)." *Id*. For these reasons, the WVDHHR's Motion to Dismiss based on sovereign immunity is **GRANTED**. Accordingly, the WVDHHR is **DISMISSED** from this action.

## F.    State Law Claims

### 1.    Claims Against the Individual DHHR Defendants

The DHHR defendants also argue that the Leonards have failed to state sufficient facts to support their state law claims, having pleaded only conclusory statements and legal allegations. The Leonards assert that, as to each count alleged, "[the Amended Complaint] pleads all the elements . . .." [Doc. 81].

### A. Intentional Infliction of Emotional Distress

Under West Virginia law, to successfully plead a claim of intentional infliction of emotional distress, the plaintiffs must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress . . . ; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Philyaw v. Eastern Assoc. Coal Corp.*, 219 W. Va. 252, 258, 633 S.E.2d 8, 14 (2006) (quoting *Travis v. Alcon Labs.*, 202 W. Va. 369, 504 S.E.2d 419 (1998)). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Travis*, Syl. Pt. 4, 202 W. Va. at 371, 504 S.E.2d at 421.

"It had not been enough that the defendant has acted with an intent which is tortious . . . or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' . . . [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Tanner v. Rite Aid of West Virginia, Inc.*, 194 W. Va. 643, 651, 461 S.E.2d 149, 157 (1995) (quoting Restatement (Second) of Torts § 46(1) cmt. j (1965)). "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." *Courtney v. Courtney*, 186 W. Va. 597, 602, 413 S.E.2d 418, 423 (1991).

The Leonards allege that Starkey, Ware, and Garvin entered the Leonards' home and seized personal property, without the consent of the Leonards or other authorization. Assuming the factual allegations in the Amended Complaint are true, the Leonards have minimally pleaded facts to support the first three elements of intentional infliction of emotional distress, but none to establish the fourth.

Here, the Leonards merely allege that the actions of defendants alleged above were "engaged in for the purpose of inflicting emotional distress" and that the DHHR defendants "caused [the Leonards] severe emotional distress." [Doc. 50 at p. 13]. These conclusory allegations of "severe emotional distress" are no "more than labels and conclusions," and merely provide a "formulaic recitation of the elements," rather than stating facts to support all elements of a plausible cause of action. *Twombly*, 550 U.S. at 555; *Travis v. JP*

*Morgan Chase Bank, N.A.*, No. 1:12-CV-89, 2012 WL 3193341, *5 (N.D. W.Va. Aug. 6, 2012) (holding that statements like the plaintiff "suffered severe emotional and psychological pain and stress," were simply labels and conclusions, and insufficient to plead "severe emotional distress").[8]    Accordingly, this Court **GRANTS** the DHHR defendants' Motion to Dismiss Counts Three and Four of the Amended Complaint.

### B. Civil Conspiracy

The Leonards allege that the DHHR defendants and their co-defendants engaged in a civil conspiracy.  West Virginia law defines civil conspiracy as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  *Dunn v. Rockwell*, 225 W. Va. 43, 56, 689 S.E.2d 255, 268 (2009) (quoting *Dixon v. American Indus. Leasing Co.*, 162 W. Va. 832, 253 S.E.2d 150, 152 (1979)).  "At its most fundamental level, a 'civil conspiracy' is 'a combination to commit a tort.'"  *Id.* (citations omitted).  Civil conspiracy is not an independent action, because "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff."  *Id.*  "In order for civil conspiracy to be actionable it must be proved that the defendants have committed

---

[8] *See* **Patrick v. PHH Mortg. Corp.**, 937 F.Supp.2d 773, 791 (N.D. W.Va. 2013) (internal citations omitted) ("Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives . . . Plaintiffs' legal conclusions and labels are insufficient to state a claim under Rule 8(a) of the Federal Rules of Civil Procedure."); *see also* **Patrick v. Teays Valley Trs., LLC**, No. 3:12-CV-39, 2012 WL 5993163 (N.D. W.Va. Nov. 30, 2012) (stating that where plaintiffs allege that defendants' actions caused the plaintiffs "severe emotional distress such that no reasonable person could be expected to endure it," with no supporting factual allegations, the plaintiffs do not allege "enough facts to state a claim to relief that is plausible on its face").

some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff." **Dixon**, 162 W. Va. at 832, 253 S.E.2d at 150. Civil conspiracy is "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." **Dunn**, 225 W. Va. at 57, 689 S.E.2d at 269.

The Court should grant a motion to dismiss a civil conspiracy claim when the plaintiffs allege that the defendants "engaged in a civil conspiracy" and "individually and collectively" committed wrongs, but do not allege facts to support that allegation. **Tucker v. Thomas**, 853 F.Supp.2d 576, 594 (N.D. W.Va. 2012). The Leonards allege that (1) the DHHR defendants met their co-defendants in a parking lot behind the Harrison County Courthouse and "conspired and planned to carry out a surprise raid on the Leonards"; (2) drove to the Leonards' residence together; (3) assisted in the removal of the children pursuant to W.Va. § 49-6-3(c); and (4) the defendants' actions "were unlawful acts in furtherance of an unlawful conspiracy to commit such acts between themselves and with defendants . . .." [Doc. 50 at pp. 5-6, 8].

The Leonards do not allege a specific tort underlying the civil conspiracy, and the only remaining tort claim is battery in Count Six. The Leonards contend that:

> Count 7 pleads all the elements of the plaintiffs' joint claims against the individual defendants for civil conspiracies under West Virginia law- i.e., that the individual defendants joined together to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, that acts were taken in furtherance of said conspiracies by one or more of the defendants, and caused both plaintiffs damages . . . The facts alleged in the Amended Complaint clearly support a prima facie case of civil conspiracy.

[Doc. 83 at 4].

It is unclear how the Leonards' allegations that the DHHR defendants and their co-defendants met in a parking lot and "conspired and planned to carry out a surprise raid" would support a *prima facie* case of civil conspiracy to commit battery, and how this claim would be actionable by Mrs. Leonard given that she has no valid claim based on the only available underlying tort of battery.

"It has been said that Section 1983 essentially creates tort liability." **State v. Chase Securities, Inc.**, 188 W. Va. 356, 364, 424 S.E.2d 591, 599 (1992). The Leonards have also alleged that "Walker directed, and Starkey and Ware carried out with the assistance of Garvin, Shingleton and Medina, an [sic] conspiracy to remove the Leonards' grandchildren from the plaintiffs' lawful court-ordered custody under the pretext of doing so pursuant to W.Va. Code § 49-6-3(c), and to violate the Leonards' constitutional rights to be free from unreasonable searches and seizures." [Doc. 81 at 2]. To successfully assert this claim, the Leonards must plausibly state a claim that the DHHR defendants acted jointly in concert and performed an overt act in furtherance of the conspiracy which resulted in the deprivation of their constitutional right to be free from unreasonable searches and seizures. *See* **Hinkle v. City of Clarksburg, W. Va.**, 81 F.3d 416, 421 (4th Cir. 1996) (citing **Hafner v. Brown**, 938 F.2d 570, 577 (4th Cir. 1992)). "Further, the proponent of a civil conspiracy claim must produce at least circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement." **Ash v. Allstate Ins. Co.**, No. 12-1533, 2013 WL 5676774, at *5 (W.

Va. Oct. 18, 2013) (citing **Wenmoth v. Duncan**, No. 3:08-cv-182, 2009 WL 2707579, at *5 (N.D. W.Va. Aug. 26, 2009)).

Here, the Leonards allege that the DHHR defendants conspired with others to deprive them of their constitutional right to be free from unreasonable searches and seizures. In support, the Leonards allege that: (1) "defendants Starkey, Ware and Garvin met with defendant Medina and/or defendant Shingleton in the parking lot . . . and they conspired and planned to carry out a surprise raid on the Leonards at their home without any prior notice"; (2) "on March 14, 2012 defendants Starkey, Ware, Garvin, Walker, Medina and Shingleton each knew they did not personally have any such warrant or order authorizing any such actions"; (3) "[w]orking in concert together at the Leonard residence on March 14, 2012 for the unlawful purpose of aiding the entry of defendants Starkey, Ware and Garvin into the home without [consent or permission for entry or removal of children], and knowing they did not have a warrant or a court order authorizing [their actions, one of the defendants reached into the home and removed Mr. Leonard, and handcuffed him]"; (4) their co-defendants entered the home with the purpose of searching and removing the children, and once inside "Starkey, Ware and Garvin, working in concert together, seized items of personal [property] and took custody of the two children"; and (5) the "[a]ctions of [DHHR] defendants alleged above were . . . unlawful acts in furtherance of an unlawful conspiracy to commit such unlawful acts between themselves and [the other defendants]". [Doc. 50 at 5-8].

Together, these allegations may be read as to assert that the DHHR defendants conspired or acted jointly with others to knowingly and unlawfully enter the Leonards' home. On this basis, the plaintiffs have alleged a cognizable § 1983 claim against the

DHHR defendants for civil conspiracy to unlawfully search the Leonards' home and seize items of personal property. Accordingly, the Motion to Dismiss as to the § 1983 civil conspiracy claim in Count Seven is **DENIED.**

## CONCLUSION

For the reasons discussed above, this Court:

- **DENIES WITHOUT PREJUDICE** the DHHR defendants' Motion to Dismiss [Doc. 73], as to the § 1983 claims in Counts 1 and 2;

- **DENIES WITHOUT PREJUDICE** the Motion to Dismiss based on qualified immunity;

- **GRANTS** the DHHR defendants' Motion to Dismiss and **DISMISSES** Counts 3 and 4 insofar as these Counts pertain to the DHHR defendants;

- **DENIES** the DHHR defendants' Motion to Dismiss the civil conspiracy claim in Count 7 insofar as it pertains to § 1983 conspiracy;

- **GRANTS** the DHHR defendants' Motion to Dismiss the civil conspiracy claims in Count 7 insofar as they pertain to all other claims except the Section 1983 conspiracy; and

- **GRANTS** the WVDHHR's Motion to Dismiss the vicarious liability claim in Count 8; accordingly, the WVDHHR is hereby **DISMISSED** from this action.

It is so **ORDERED**.

The Court directs the Clerk to traansmit copies of this Order to counsel of record.

**DATED**: January 14, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE