# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

**PAULA L. LEONARD** and
**ROBERT P. LEONARD,**

      Plaintiffs,

v.                       **CIVIL ACTION NO. 1:14-CV-42**
                                        **(Judge Bailey)**

**SARAH STARKEY, BRENDA WARE,**
**TERRY WALKER, JULIE GARVIN,**
**COTY SHINGLETON, JAMES J. MEDINA, II,**
and **WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS STARKEY, WARE, AND WALKER'S MOTION FOR SUMMARY JUDGMENT

Pending before this Court is Defendants Starkey, Ware, and Walker's Motion for Summary Judgment [Doc. 123], which was filed October 24, 2016. The plaintiffs filed their Response in Opposition [Doc. 124] on November 6, 2016. The DHHR defendants filed their Reply brief [Doc. 126] on November 21, 2016. This matter is now ripe for adjudication. For the reasons that follow, the Court **GRANTS** the DHHR defendants' Motion for Summary Judgment **[Doc. 123]**.

## BACKGROUND

**A.**     **Factual Background**

Robert Leonard ("Mr. Leonard") and Paula Leonard ("Mrs. Leonard") filed a petition in the Circuit Court of Harrison County, West Virginia, alleging parental abuse and/or

neglect of the Leonards' two grandchildren. Julie Garvin ("Garvin")[1] was appointed as the guardian *ad litem* for the children in the action ("the child abuse case"), and Sarah Starkey ("Starkey") and Brenda Ware ("Ware") were Child Protective Services ("CPS") workers assigned by their supervisor, Terri Walker ("Walker"), to the case [Doc. 50 at ¶ 4]. Upon conclusion of the child abuse case, the Leonards were granted physical custody of their grandchildren; the Leonards did not receive legal custody, which remained with the WVDHHR.[2] [Id.].

The Leonards allege that "defendants Garvin and Starkey, and possibly Walker," had planned for Starkey to conduct a home visit without notice prior to March 14, 2012; Mr. Leonard refused entry, and "later asserted in court papers filed in the child abuse case . . . that he has a constitutional right to refuse a government agent's entry into his home if the agent does not have a warrant or court order authorizing the entry." [Id.].

Following Starkey's unsuccessful home visit, Starkey, Ware, and Garvin allegedly planned to "remove the children from the Leonards' lawful court-ordered physical custody by force aided by the assistance of law enforcement under color of CPS authority" [id. at ¶ 5], with "the approval of and under the direction of defendant Walker." [Id.]. On March 14, 2012, the West Virginia State Police launched a criminal investigation against Mr. Leonard based upon his daughter's allegation that he had sexually molested her when she was a child [Doc. 118-4, Ware Decl. ¶ 5].

---

[1] In a previous Order [Doc. 91], this Court found defendant Garvin was entitled to immunity and dismissed her from this action.

[2] In a previous Order [Doc. 95], this Court found defendant WVDHHR could not be held vicariously liable; accordingly, it was dismissed from this action.

2

Starkey called the Harrison County 911, identified herself as a CPS worker, and requested assistance in the removal, indicating that she anticipated problems at the residence [Doc. 115 Ex. E, Starkey Decl. ¶ 6; Ex. F, Harrison/Taylor County CAD Incident Report]. Specifically, a social worker had informed the deputy defendants that Mr. Leonard was under criminal investigation for allegedly molesting his daughter, that he had guns and might use them, that he had previously threatened to harm the children, and that there was fear of a hostage situation if CPS attempted to remove the children. [Doc. 115 Ex. C, Garvin Decl. ¶ 10; Ex. E, Starkey Decl. ¶ 7]. Defendants Starkey and Ware called Assistant Prosecuting Attorney Patricia Dettori, who represented the DHHR in child abuse and neglect cases, to advise her of the impending removal. Dettori told Starkey and Ware they did not need to get a petition or court approval prior to taking the children, as the WVDHHR already had legal custody. [Doc. 123 Ex. A ¶ 4 and Ex. B ¶ 7].

Harrison County Deputy Sheriff Shingleton was dispatched to meet Starkey, Ware and Garvin in the parking lot behind the Harrison County Courthouse to accompany them to the Leonards' home. [Doc. 118-7 Ex. G, Shingleton Decl. ¶ 4]. Shingleton contacted Deputy Medina for assistance. [Doc. 118-8 Ex. H, Medina Decl. ¶ 4]. The defendants all arrived at the Leonards' home around 6:21 p.m. The deputy defendants each arrived in their law enforcement vehicles, while Starkey, Ware and Garvin arrived in one car together. [Id.]. The deputy defendants, who were in their uniforms and armed, approached the Leonards' home, where Mr. Leonard was present. [Id. at ¶ 6]. The deputies asked Mr. Leonard to exit the home, but Mr. Leonard asked if they had a warrant and then refused to exit the home. [Doc. 124-2, Robert P. Leonard Decl. ¶ 8]. Further, the deputies could see the children in the home, and Mr. Leonard was blocking access to them. [Doc. 118-7

Ex. G, Shingleton Decl. ¶ 11]. Deputy Medina then reached into the home and escorted Mr. Leonard outside by his wrists to search and detain him. [Doc. 118-8, Medina Decl. ¶ 11]. Mr. Leonard alleges deputy Shingleton choked him at some point after being placed in handcuffs. Deputy Medina testified that he believed his warrantless entry into the home to separate Mr. Leonard from the children was justified by the exigent circumstances exception. [Ex. M 14:21-15:14].

After Mr. Leonard was restrained, Starkey, Ware, and Garvin entered the home to retrieve the children and a few of their belongings. [Doc. 118-7 Ex. G, Shingleton Decl. ¶ 12]. Mrs. Leonard alleges a couple articles of her clothing were also taken. Garvin and Shingleton then took the children directly to the Harrison County Courthouse for emergency removal proceedings pursuant to W.Va. Code § 49-6-3(c). [Id. at ¶ 15].

**B.     Procedural Background**

On March 12, 2014, the Leonards filed suit in this Court against Starkey, Ware, Walker, Garvin, Shingleton, Medina, and the West Virginia Department of Health and Human Resources ("WVDHHR") [Doc. 1]. On October 7, 2014, Judge Irene M. Keeley[3] heard oral argument on the previous motions to dismiss [Doc. 43], and denied the same without prejudice. [Id.]. The Court ordered the Leonards to file an amended complaint, [Id. at 2], which they did on December 1, 2014, alleging the following [Doc. 50]:

- **Counts 1 and 2:** Violation of the Leonards' right to be free from unreasonable searches and seizures under the Fourth and Fourteenth

---

[3] This matter was transferred to the undersigned judge on September 22, 2015 [Doc. 90].

Amendments, pursuant to 42 U.S.C. § 1983 (against Starkey, Ware, Walker, Garvin, Shingleton and/or Medina);

- **Counts 3 and 4:** Intentional Infliction of Emotional Distress (against Starkey, Ware, Walker, Garvin, Shingleton, and/or Medina);[4]

- **Count 6:** Assault and Battery (against Shingleton and/or Medina);

- **Count 7:** Civil Conspiracy (against Starkey, Ware, Walker, Garvin, Shingleton, and Medina); and

- **Count 8:** Vicarious Liability (against defendant WVDHHR).

On April 30, 2015, the DHHR defendants filed a Motion to Dismiss [Doc. 73], arguing that the Leonards did not plead sufficient facts to state a claim upon which relief could be granted, or to overcome the defendants' sovereign and qualified immunity. In its Order on the DHHR's Motion to Dismiss, this Court ruled as follows:

- **DENIES WITHOUT PREJUDICE** the DHHR defendants' Motion to Dismiss [Doc. 73], as to the § 1983 claims in Counts 1 and 2;

- **DENIES WITHOUT PREJUDICE** the Motion to Dismiss based on qualified immunity;

- **GRANTS** the DHHR defendants' Motion to Dismiss and **DISMISSES** Counts 3 and 4 insofar as these Counts pertain to the DHHR defendants;

- **DENIES** the DHHR defendants' Motion to Dismiss the civil conspiracy claim in Count 7 insofar as it pertains to § 1983 conspiracy;

---

[4] There is no "Count 5" listed in the Amended Complaint.

- **GRANTS** the DHHR defendants' Motion to Dismiss the civil conspiracy claims in Count 7 insofar as they pertain to all other claims except the Section 1983 conspiracy; and

- **GRANTS** the WVDHHR's Motion to Dismiss the vicarious liability claim in Count 8; accordingly, the WVDHHR is hereby **DISMISSED** from this action.

The DHHR defendants now move for summary judgment on the remaining claims.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment

must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

## ANALYSIS

The following claims remain against the DHHR defendants: (1) violations of the plaintiffs' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 in their individual capacities and (2) civil conspiracy. First, defendants argue that the Leonards' state law claims are barred by statutory immunity pursuant to the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12a-5(b) (the "Act"). Second, the DHHR defendants contend that the Leonards have failed to establish a § 1983 claim, or in the alternative, that they are entitled to qualified immunity. Finally, defendants argue that because the Leonards have failed to support any tort claim, the claim of civil conspiracy must fail as a matter of law.

**A.    Immunities Generally**

The Supreme Court of Appeals of West Virginia has recently noted the complexities involved when addressing claims of immunity:

> We begin our analysis by observing that, admittedly, our caselaw analyzing and applying the various governmental immunities – sovereign, judicial, quasi-judicial, qualified, and statutory – to the vast array of governmental agencies, officials, employees and widely disparate factual underpinnings has created a patchwork of holdings. These various holdings against which each particular set of facts must be analyzed lead inevitably to a situation

7

where some allegations fit more comfortably with certain syllabus points than others. Much of the absence of harmony is simply the nature of the beast: immunities must be assessed on a case-by-case basis in light of the governmental entities and/or officials named and the nature of the actions and allegations giving rise to the claim. *See* Syl. Pt. 9, *in part*, **Parkulo** [**v. West Virginia Bd. of Probation and Parole**], 199 W. Va. 161, 483 S.E.2d 507 [(1996)] ("The existence of the State's immunity [] must be determined on a case-by-case basis."). As such, we will examine the claims in the case sub judice under the scope of the particular qualified immunity holdings which most accurately conform to the nature of the particular allegations.

**West Virginia DHHR v. Payne**, 231 W. Va. 563, 571, 746 S.E.2d 554, 562 (2013).

With this guidance in mind, this Court will delve into the various immunities claimed by the defendants.

**B.    Qualified Immunity**

The DHHR defendants argue that the Leonards' § 1983 claims must be dismissed because: (1) the evidence fails to support a § 1983 claim; or (2) qualified immunity bars the claim. Section 1983 allows for a plaintiff to assert a claim against any "person" who, acting under color of state law, "depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See* **Wirth v. Surles**, 562 F.2d 319, 321 (4th Cir. 1977) (citing **Monroe v. Pape**, 365 U.S. 167 (1961)).

As an initial matter, this Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 396 (4th Cir. 2015). This Court, in its discretion, may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *M.C. ex rel. Crawford v. Amrhein*, 598 Fed.Appx. 143, 146 (4th Cir. 2015) (citing *Pearson*, 555 U.S. at 236).

The Leonards allege that Starkey, Ware, and Garvin entered the Leonards' home and seized personal property, allegedly without the consent of the Leonards or other authorization. On this basis, the Leonards claims for Fourth and Fourteenth Amendment violations against the DHHR defendants under § 1983.

### i. Clearly Established Right

Fourth Amendment protections are triggered when the State intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.'" *New York v. Class*, 475 U.S. 106, 112 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "Because individuals ordinarily possess the highest expectation of privacy within the curtilage of their home, that area typically is 'afforded the most stringent Fourth Amendment protection.'" *United States v. Taylor*, 90 F.3d 903, 908 (4th Cir. 1996) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976)). "With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (citations omitted).

9

The right to be secure in one's home from warrantless and forcible intrusion in the absence of exigent circumstances is clearly established. In **Payton v. New York**, 445 U.S. 573, 590 (1980), the Supreme Court stated that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant." *Id*. Thus, at the time of the intrusion, there was clearly established law from the Supreme Court prohibiting the DHHR defendants' entry into the Leonards' home without a warrant, exigent circumstances, or court order.

### ii. Violation of Constitutional Right

The Leonards claim that their constitutional rights were violated when the DHHR defendants, acting under color of state law, entered their home without a warrant, exigent circumstances, or other authorization, in violation of the Fourth Amendment and seized their personal property. "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" **Brigham City v. Stuart**, 547 U.S. 398, 403 (2006) (quoting **Groh v. Ramirez**, 540 U.S. 551, 559 (2004)). However, "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Id*. at 403.

In this case, a social worker had informed the dispatcher "that she anticipated problems at the residence," and when deputies arrived at the home and requested that Mr. Leonard come outside, Mr. Leonard asked if they had a warrant and then refused to exit the home. [Id. at 6]. The deputies then reached into the home and escorted Mr. Leonard outside by the wrists to search and detain him. [Doc. 118-7 Ex. H, Medina Decl. ¶ 11]. Starkey, Ware, and Garvin then entered the house to retrieve the children.

In *Underwood v. WVDHHR*, 2013 WL 2319253 (S.D. W.Va. May 28, 2013), Judge Joseph R. Goodwin explained the importance of legal custody by the DHHR in examining qualified immunity. There, the plaintiff similarly asserted the WVDHHR violated her constitutional rights when its employees removed her children from the home. Judge Goodwin noted

> A reasonable official could therefore believe that when the state retains legal custody, it can rescind physical custody without violating the Fourth Amendment. *Rivera v. Mattingly*, No. 06 Civ. 7077(TPG), 2011 WL 4344422, at *11 (S.D.N.Y. Sept. 12, 2011)(finding that plaintiffs' Fourth Amendment claim failed as a matter of law because they could provide no Second Circuit cases "holding that Fourth Amendment seizures occur when foster children in the state's legal custody are moved from one foster home to another."); *A.C. v. Mattingly*, No. 05 CV 2986(TPG), 2007 WL 894268, at *5-6 (S.D.N.Y. Mar. 20, 2007)(finding no Fourth Amendment violation because the state retained legal custody of the infant plaintiffs); *Hunt v. Green*, 376 F.Supp.2d 1043, 1057-58 (D.N.M. 2005)(noting that "[t]here are good reasons to require a warrant or court order when . . . the state is removing children from parents or others who have legal custody," but that "[t]here is no such compelling reason for judicial action where the state is changing foster parents or physical guardians," because this would "largely erase the distinction between legal and physical custody"); *id*. at 1058 n.5 (recognizing "the lack of case law discussing the constitutional implications

of a state changing the placement of children in the state's legal custody," and analogizing to cases regarding the rights of prisoners); ***Gedrich v. Fairfax Cnty. Dep't of Family Servs.***, 282 F.Supp.2d 439, 469-70 (E.D. Va. 2003)(finding no Fourth Amendment violation for confining plaintiff minor child when the state had legal custody).

This is precisely the advice Harrison County Assistant Prosecuting Attorney Patricia Dettori told the DHHR defendants. They simply did not require a petition or court approval before removing the children; the WVDHHR had legal custody. Accordingly, they had no reason to believe that the removal would violate the plaintiffs' constitutional rights. Accordingly, the DHHR defendants are entitled to qualified immunity on Counts 1 & 2.

**C.      Statutory Immunity**

"In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer."  Syl. Pt. 6, ***Clark v. Dunn***, 195 W. Va. 272, 465 S.E.2d 374 (1995).  "'A public official who is acting within the scope of his authority and is not covered by the provisions of W.Va. Code [§] 29-12A-1 *et seq.*, is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known . . ..'  Syl., ***State v. Chase***

*Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992)." Syl. Pt. 3, *Clark*, 195 W. Va. 272.

The DHHR defendants also claim immunity for Child Protective Services Case Workers. West Virginia Code § 49-6A-9(g) provides:

> No Child Protective Services Case Worker may be held personally liable for any professional decision or action thereupon: arrived at in the performance of his or her official duties as set forth in this section or agency rules promulgated thereupon *Provided, That nothing in this subsection protects any Child Protective Services worker from any liability arising from* the operation of a motor vehicle or for *any loss caused by gross negligence, willful or wanton misconduct or intentional misconduct.*

W.Va. Code § 49-6A-9(g) (emphasis added).

The evidence shows that the DHHR defendants did no more than was necessary to carry out the removal of the children. Having legal custody, and confirming with the Assistant Prosecuting Attorney that they did not require a petition or court order, the DHHR defendants simply moved forward with removal. Mr. Leonard attempted to prevent removal, and the police assisted in removing that obstacle. Subsequently, the children were safely removed from the home. This Court finds nothing that amounts to gross negligence, willful or wanton misconduct or intentional misconduct. Accordingly, the DHHR defendants are entitled to statutory immunity on all state law claims.

**D.     Civil Conspiracy**

The Leonards allege that the DHHR defendants and their co-defendants engaged in a civil conspiracy. West Virginia law defines civil conspiracy as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." ***Dunn v. Rockwell***, 225 W. Va. 43, 56, 689 S.E.2d 255, 268 (2009) (quoting ***Dixon v. American Indus. Leasing Co.***, 162 W. Va. 832, 253 S.E.2d 150, 152 (1979)). "At its most fundamental level, a 'civil conspiracy' is 'a combination to commit a tort.'" ***Id***. (citations omitted). Civil conspiracy is not an independent action, because "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." ***Id***. "In order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff." ***Dixon***, 162 W. Va. at 832, 253 S.E.2d at 150. Civil conspiracy is "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." ***Dunn***, 225 W. Va. at 57, 689 S.E.2d at 269.

The Court should dismiss a civil conspiracy claim when the plaintiffs allege that the defendants "engaged in a civil conspiracy" and "individually and collectively" committed wrongs, but do not produce evidence to support that allegation. ***Tucker v. Thomas***, 853 F.Supp.2d 576, 594 (N.D. W.Va. 2012). The Leonards allege that (1) the DHHR defendants met their co-defendants in a parking lot behind the Harrison County Courthouse and "conspired and planned to carry out a surprise raid on the Leonards"; (2) drove to the

14

Leonards' residence together; (3) assisted in the removal of the children pursuant to W.Va. § 49-6-3(c); and (4) the defendants' actions "were unlawful acts in furtherance of an unlawful conspiracy to commit such acts between themselves and with defendants . . .." [Doc. 50 at pp. 5-6, 8].

"It has been said that Section 1983 essentially creates tort liability." *State v. Chase Securities, Inc.*, 188 W. Va. 356, 364, 424 S.E.2d 591, 599 (1992). The Leonards have also alleged that "Walker directed, and Starkey and Ware carried out with the assistance of Garvin, Shingleton and Medina, an [sic] conspiracy to remove the Leonards' grandchildren from the plaintiffs' lawful court-ordered custody under the pretext of doing so pursuant to W.Va. Code § 49-6-3(c), and to violate the Leonards' constitutional rights to be free from unreasonable searches and seizures." [Doc. 81 at 2]. To successfully prevail on this claim, the Leonards must ultimately show that the DHHR defendants acted jointly in concert and performed an overt act in furtherance of the conspiracy which resulted in the deprivation of their constitutional right to be free from unreasonable searches and seizures. See *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 938 F.2d 570, 577 (4th Cir. 1992)). "Further, the proponent of a civil conspiracy claim must produce at least circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective and mutual agreement." *Ash v. Allstate Ins. Co.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013) (citing *Wenmoth v. Duncan*, No. 3:08-cv-182, 2009 WL 2707579, at *5 (N.D. W.Va. Aug. 26, 2009)).

Lacking from the plaintiffs' allegations is any evidence that the defendants came to any mutual agreement to commit any tort. While the plaintiffs offer self-serving and speculative assertions that the DHHR defendants were out to get them for telling them to do their jobs in prior proceedings, there is simply no evidence, circumstantial or otherwise, which suggests this was the motive for their actions in removing the children. Indeed, the defendants did in fact meet and come to an agreement to remove the children from the Leonards' physical custody. This decision came, however, after Garvin's suspicions regarding sexual abuse in the house were substantiated by Mr. Leonard's daughter's sworn statement to police that he had sexually molested her when she was a child. Furthermore, Starkey and Ware called Assistant Prosecuting Attorney Patricia Dettori, who was representing the WVDHHR in the pending child abuse and neglect cases to advise her of the impending removal. Assistant Dettori informed Starkey and Ware that they did not need to get a petition or court approval before taking the children, as the DHHR already had legal custody of the children. [Doc. 123 Ex. A ¶ 4; Ex. B ¶ 7]. After Mr. Leonard was detained, the DHHR defendants did their jobs in ensuring the safety of the children. After what had transpired, no reasonable jury could conclude that entering the house and removing the children from that situation violated any constitutional rights. The DHHR's presence was "related to the objectives of the authorized intrusion." *Wilson v. Layne*, 526 U.S. 603, 611 (1999). And similar to *Hunsberger v. Wood*, 570 F.3d 546 (4th Cir. 2009), the DHHR defendants' presence in the house was useful to secure the children, who were unknown to the officers.

Then, while inside, no search ensued; rather, with the assistance of Mrs. Leonard, Starkey and Ware merely gathered some of the children's clothing and toys, and a sippy cup. [Doc. 123 Ex. E pp. 21-26]. Mrs. Leonard asserts that the DHHR defendants took some of her clothing while gathering the children's belongings. [Id. at pp. 26-27]. This Court finds that even if true, the Fourth Circuit has held that negligence is insufficient to support a Fourteenth Amendment violation. See **Young v. City of Mt. Rainier**, 238 F.3d 567, 577 (4th Cir. 2001). There is simply no evidence that anything taken from the Leonards' home was done so intentionally or maliciously. The defendants are therefore entitled to summary judgment on this claim.

**E.     Defendant Walker**

Plaintiffs assert a claim against defendant Walker for supervisory liability. The Fourth Circuit has firmly held that supervisory officials may be held personally liable in certain circumstances for the constitutional injuries inflicted by their subordinates. See **Orpiano v. Johnson**, 632 F.2d 1096, 1101 (4th Cir. 1980); **McCoy v. McCoy**, 528 F.Supp. 712, 714 (N.D. W.Va.1981) (Haden, J.) (explaining that a prisoner states a cause of action under 42 U.S.C. § 1983 where he alleges that the Commissioner of the WVDOC has failed to supervise and control his subordinates who personally deprived the inmate of his civil rights).

There is, however, no *respondeat superior* liability pursuant to 42 U.S.C. § 1983. See **Monell v. Dep't of Soc. Servs.**, 436 U.S. 658 (1978). "[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights," **Vinnedge v. Gibbs**, 550 F.2d 926, 928 (4th Cir.1977), or where a

subordinate acts pursuant to a policy or custom for which the supervisor is responsible. ***Fisher v. Wash. Metro. Area Transit Auth.***, 690 F.2d 1133, 1143 (4th Cir. 1982), *abrogated on other grounds by* ***County of Riverside v. McLaughlin***, 500 U.S. 44 (1991). Specifically, a supervisor may be liable under § 1983 if the following elements are established:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

***Shaw v. Stroud***, 13 F.3d 791, 799 (4th Cir. 1994).

Moreover, it has been established that the plaintiff bears a heavy burden of proof which cannot be satisfied by pointing to a single incident or isolated incidents because "a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibility." ***Slakan v. Porter***, 737 F.2d 368, 373 (4th Cir. 1984).

In this case, defendant Walker was not present at the time of the removal. Therefore, she had no participation in physically carrying out any of the acts which took place. Further, any direction the other defendants took from defendant Walker would have been isolated to this single incident, which is insufficient to satisfy the heavy burden of proof

18

to attach supervisory liability. More importantly, this Court has found no constitutional injury upon which liability could attach. Accordingly, summary judgment must be awarded to defendant Walker.

## CONCLUSION

For the reasons discussed above, this Court **GRANTS** Defendants Starkey, Ware, and Walker's Motion for Summary Judgment **[Doc. 123]**. Accordingly, these defendants are hereby **DISMISSED** from this action. All matters having now been dismissed, this matter is **ORDERED STRICKEN** from the active docket of this Court. Separate judgment is now **ORDERED** in favor of all defendants in this matter.

As a final matter, all remaining pending motions **[Docs. 138 & 156]** are hereby **MOOT**.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

**DATED**: January 24, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE